IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| D.L.S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Civil No. 20-14426 (RMB) <br><br> OPINION |

**BUMB**, U.S. District Judge:

This matter comes before the Court upon an appeal by Plaintiff from a denial of social security disability benefits. For the reasons set forth below, the Court shall vacate the decision of the Administrative Law Judge ("ALJ") and remand for proceedings consistent with this Opinion's reasoning.

I.      **STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, the Court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (*citing Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). "Substantial evidence" means "'more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales*, 402 U.S. 389, 401

1

(1971) (*quoting Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer*, 186 F.3d at 427 (citations omitted). In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *see also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (*citing Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(a)(3)(A). The Act further states the following:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382(c)(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's alleged disability status for purposes of social security benefits, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i-v). The analysis proceeds as follows:

At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201-02 (3d Cir. 2019) (alterations in original).

## II.     FACTS

The Court recites herein only the facts that are necessary to its determination on appeal. Plaintiff was 40 years old on the alleged onset date of May 18, 2016. [Docket No. 11 (referred to hereafter as "Plaintiff's Brief"), at 2 (citations omitted).] Plaintiff has a high school education and prior work experience as an appliance servicer attendant and sales representative (selling commercial equipment supplies). [*Id.*] Plaintiff claims disability status, in part, arising from chronic obstructive pulmonary disease ("COPD"), irritable bowel syndrome ("IBS"), obesity, diabetes mellitus, depressive disorder, bipolar disorder, panic disorder, and generalized anxiety disorder. [*Id.*]

On January 29, 2019, Plaintiff appeared at a hearing before the Honorable Karen Shelton (ALJ) in Pennsauken, New Jersey. [*Id.* at 1.] On April 1, 2019, the ALJ issued an unfavorable decision denying Plaintiff's claim for social security benefits. [*Id.*] Plaintiff appealed the ALJ's decision internally to the Appeals Council, but his appeal was denied on August 12, 2020. [*Id.*] On October 14, 2020, Plaintiff filed a Complaint against the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383, invoking the jurisdiction of this Court. [Docket No. 1.] On April 13, 2021, the Social Security Administration filed the Administrative Record on the docket, which consists of dozens of medical records and other non-medical evidence pertaining to Plaintiff's claim for social security benefits. [Docket No. 8 (referred to hereafter as "AR").]

### III. ALJ'S DETERMINATION

On April 1, 2019, the ALJ found Plaintiff not disabled for purposes of social security benefits. [AR at 33.] The ALJ expressly acknowledged that Plaintiff's alleged onset date of May 18, 2016, was "the day after a prior unfavorable decision was issued by another [ALJ]." [*Id.* at 18.] At Step Two, the ALJ found that Plaintiff had the following "severe" physical and mental impairments, explaining that such "medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28":  COPD, IBS, hyperlipidemia, diabetes mellitus, obesity, depressive disorder, bipolar disorder, panic disorder, and generalized anxiety disorder. [*Id.* at 20.]

At Step Three, the ALJ found that none of Plaintiff's impairments, or any combination thereof, met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, subpart P, Appendix 1. [*Id.* at 21.] The ALJ also considered the "paragraph B" criteria with respect to Plaintiff's mental impairments at Step Three, finding that Plaintiff had a mild limitation in interacting with others and moderate limitations in the other three broad areas of functioning (understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself). [*Id.* at 22-23.] Because Plaintiff's mental health impairments did not cause at least two "marked" limitations or at least one "extreme" limitation in any of the four broad areas of functioning as measured by the "paragraph B" criteria, the ALJ found that the "paragraph B" criteria were not

satisfied. [*Id.* at 23.]

Before proceeding to Step Four, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC") to perform light work with certain limitations:

> [N]ever climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; frequently balance and stoop; occasionally kneel, crouch, and crawl; should avoid and have less than occasional exposure to extreme cold, heat, wetness, humidity, noise, and pulmonary irritants; can understand, remember, and carry out simple and detailed, but not complex, instructions; can make simple work decisions in a routine environment with few changes and no fast paced production requirements; and can work 2 hours before needing a break.

[*Id.* at 24.]

Based on the testimony of impartial Vocational Expert Robert Baker, the ALJ found that, although Plaintiff could not perform any of his past relevant work, he could perform the jobs of collator operator, ticket seller, and routing clerk, and that a significant number of such jobs existed in the national economy. [*Id.* at 32.] Thus, the ALJ concluded that Plaintiff was not disabled for purposes of social security benefits. [*Id.* at 33.]

## IV.   ANALYSIS

On appeal, Plaintiff asserts that three of the ALJ's findings, in particular, were not supported by substantial evidence: (1) that the limitations included by the ALJ in the RFC assessment failed to incorporate appropriate limitations to account for all of Plaintiff's "severe" impairments (as determined by the ALJ at Step Two); (2) that the ALJ failed to properly consider the medical opinion evidence in the record; and (3)

that the ALJ failed to consider the statement of Joyce Silberg, Plaintiff's mother. [Plaintiff's Brief at 13-25.]

### a. The RFC Assessment and Plaintiff's "Severe" Impairments

Plaintiff first argues that "the ALJ failed to incorporate limitations in the RFC [assessment] regarding [Plaintiff's] irritable bowel syndrome, depressive disorder, bipolar disorder and generalized anxiety disorder. . . despite recognizing them as severe impairments." [Plaintiff's Brief at 15.] In his supporting brief, Plaintiff also highlights his COPD and the ALJ's Step Two findings regarding his mental impairments, specifically, the ALJ's "paragraph B" findings. [*Id.* at 17-18.] According to Plaintiff, because the RFC assessment represents the most an individual can do despite his or her limitations, "the RFC [assessment] identified by the ALJ does not have a meaningful resemblance to Plaintiff's maximal capacity to work based on the severe impairments and associated limitations acknowledged by the ALJ." [*Id.* at 16.]

The Court will first consider Plaintiff's challenged physical impairments (his IBS and COPD). Plaintiff argues that his case is "nearly identical" to this Court's prior decision in *Williams v. Comm'r. Soc. Sec. Admin.*, where this Court remanded a denial of social security benefits after the ALJ's decision "neither cited, nor discussed" a report stating that the claimant's overactive bladder syndrome resulted in her urinating upwards of ten times a day "although the report was admitted into evidence during the disability hearing." Civil No. 18-13465 (RMB), at *6 (D.N.J.

Sep. 20, 2019). However, unlike in *Williams*, the evidence that Plaintiff urges the Court to consider here is not a medical report left out of the ALJ's analysis. In fact, Plaintiff is unable to point to any specific evidence in the record that the ALJ failed to consider in her analysis of the limitations included in the RFC assessment. Instead, Plaintiff argues that the ALJ failed to give more weight to his own testimony: "He testifies that he has difficulty leaving his house due to his need to use the bathroom upwards of 10 times a day for at least five to ten minutes at a time. Despite the Plaintiff's testimony and the ALJ's finding that the Plaintiff's Irritable Bowel Syndrome is a severe impairment, the ALJ failed to include any limitations consistent with the same, and failed to explain what conditions, if any are consistent with this severe impairment." [Plaintiff's Brief at 16 (citations omitted).] With respect to Plaintiff's COPD, Plaintiff admits that "[w]hile the ALJ did include a limitation to avoid exposure to pulmonary irritants, she did not account for the remainder of Plaintiff's symptomology," including an emergency room visit and hospitalization of Plaintiff in December 2016 during which he "reported wheezing, feeling dizzy, and lightheaded," as well as Plaintiff's testimony at the hearing before the ALJ that he is unable "to stand or walk for more than three to four minutes at a time." *Id.* at 17-18.

However, having carefully reviewed the ALJ's decision, the Court finds that the ALJ did expressly consider Plaintiff's testimony regarding both of his challenged physical impairments of IBS and COPD. The ALJ also explained why she afforded his testimony less weight:

> He feared going out due to IBS and anxiety. He used the bathroom 10 times a day. He had diarrhea throughout the day. He had difficulty being around chemicals due to COPD. He kept an inhaler with him at all times. He could only walk 3 or 4 minutes.
>
> [. . .]
>
> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the medical evidence since the alleged onset date does not substantiate the claimant's allegation of disability.

[AR at 25.]

The ALJ then goes on to cite a host of relevant medical evidence in the record. Regarding Plaintiff's IBS, the ALJ noted a "gastroenterology follow up in June 2016 for complaints of diarrhea on a daily basis," but which also showed that Plaintiff had "a good response to medication samples given at his last visit" (an excellent result was reported with Viberzi). [*Id.* at 25 (citations omitted).] The ALJ noted that the medical evidence also showed that Plaintiff's IBS had worsened in July 2017, but "[i]n July 2018, he was noted to have marked improvement with Viberzi" and "had reports of only occasional abdominal bloating and diarrhea." [*Id.* at 26.] The ALJ concluded that Plaintiff "had improvement in IBS symptoms with medication." [*Id.* at 30.] Regarding Plaintiff's COPD, the ALJ similarly acknowledged a long series of Plaintiff's treatment notes during the relevant time period, including a "routine primary care follow up in 2018" that showed Plaintiff "had slightly worsening

COPD symptoms of shortness of breath and wheezing," but the ALJ ultimately concluded that "[t]he evidence continues to show waxing and waning symptoms of diabetes and COPD that are treated with medications alone," and that Plaintiff's COPD had caused "no exacerbations requiring hospitalizations." [*Id.* at 26, 30.]

The Court acknowledges that in the RFC assessment, the ALJ also included relevant limitations that would help alleviate the alleged symptoms of Plaintiff's IBS and COPD, including that Plaintiff "should avoid and have less than occasional exposure to extreme cold, heat, wetness, humidity, noise, and pulmonary irritants" and "can work 2 hours before needing a break." [*Id.* at 24.] The Court also agrees with the Commissioner that objective medical evidence is a very important factor for the ALJ to consider in assessing Plaintiff's testimony regarding the alleged symptomology of his impairments. [Docket No. 15 (referred to hereafter as "Commissioner's Brief"), at 8-9.] The Court is satisfied that the ALJ not only took Plaintiff's testimony into consideration, but also adequately explained why certain medical evidence in the record supporting her conclusion that the persistence and limiting effects of Plaintiff's symptoms were not as debilitating as Plaintiff had self-reported. Nevertheless, she included relevant limitations in the RFC assessment regarding these impairments. The Court disagrees with Plaintiff's contention that this is a case where the ALJ did not "seriously consider" Plaintiff's "subjective complaints of pain." [Plaintiff's Brief at 17.] Instead, the Court finds that the ALJ's findings are consistent with the objective medical evidence in the record. Plaintiff's

10

argument that his own testimony, which the ALJ also considered, would compel a reasonable mind to conclude that additional limitations in the RFC assessment are necessary is unpersuasive. Thus, the Court finds that the ALJ's findings with regard to Plaintiff's IBS and COPD are supported by substantial evidence.

With respect to Plaintiff's mental impairments, the Court is also satisfied that the ALJ engaged in a meaningful analysis of the various medical and non-medical evidence in the record, including outpatient reports from June 2016 and July 2017 that noted Plaintiff's long history with anxiety and depression. [AR at 27.] Like Plaintiff's IBS and COPD, the ALJ concluded, after summarizing the pertinent medical evidence in the record, that "the claimant similarly managed his depression and anxiety with medications alone. He has no history of psychiatric hospitalizations." [*Id.* at 31.] The ALJ also relied on the findings of state agency psychological consultant, Sharon Ames-Dennard, PhD. and Thomas Conger, PhD., affording "great weight" to these doctors' opinions that "claimant could perform a range of simple work with adequate concentration, social interactions and adaption." [*Id.* at 30.] The ALJ also noted in her decision that in March 2017, Dr. Cogner "found mild limitations in all of the new 'paragraph B' criteria, except moderate limitations in concentration, persistence, and pace." [*Id.* at 30.]

The Court queries why the ALJ's own findings regarding the "paragraph B" criteria were more restrictive than Dr. Cogner's findings, whose opinion she afforded great weight. The ALJ certainly was permitted to reach a different conclusion than

11

Dr. Cogner after reviewing the entire record as a whole, provided that the ALJ's findings are supported by substantial evidence. At Step Two, the ALJ found that Plaintiff had a mild limitation in interacting with others and moderate limitations in the other three broad areas of functioning measured by the "paragraph B" criteria (understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself). [AR at 23-24.] The Court finds that, at Step Two, the ALJ adequately explained why she made these findings and cited the relevant evidence in the record upon which her conclusions were based. However, nowhere in her discussion of the RFC assessment does the ALJ appear to address how Plaintiff's functional limitations as measured by the "paragraph B" criteria are accounted for in the RFC assessment.

On remand, the ALJ shall explain whether or not additional limitations are warranted in the RFC assessment in light of her findings regarding the four broad areas of functioning as measured by the "paragraph B" criteria. It may very well be the case that the ALJ reaches the same conclusion on remand and determines that additional limitations in the RFC assessment are not warranted. However, the Court finds that such a determination by the ALJ is necessary to develop the record and ensure that the ALJ's findings are not internally inconsistent. Such additional analysis from the ALJ would allow the Court to determine that "all of claimant's impairments – even ones that are not 'severe' – in combination, when making the RFC determination" are accounted for in the event that further analysis from this

Court is required. [Plaintiff's Brief at 14 (*citing* 20 C.F.R. § 404.1545(a)(2)(m)).]

### b. The ALJ's Consideration of the Medical Opinion Evidence on Record

Next, Plaintiff argues that the ALJ erred by "ignor[ing] the treatment length of Plaintiff's primary care physician as well as his longstanding therapist," Dr. Michael Monte Carlo and Brian Stemetzki,[1] respectively. [Plaintiff's Brief at 23.] Plaintiff also suggests that the ALJ failed in weighing other medical evidence in the record as more credible and failed to "give some indication of the evidence which is rejected and the reasons for doing so." [*Id.* at 22 (*citing Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 131 (3d Cir. 2000)).] The Court disagrees. The ALJ dedicated almost an entire page of her 16-page decision to the findings of Plaintiff's primary care physician, Dr. Carlo, alone. After summarizing Dr. Carlo's findings, which dated back to November 2016, the ALJ explained at length, why she afforded little weight to his opinion:

> Although Dr. Monte Carlo has a longitudinal treating history with the claimant, his opinions are internally contradicted by his own treating notes. His opinions are overly restrictive in light of the treating record as a whole. While he suggests significant absences and time off task, his treating notes

---

[1] In his Supporting Brief, Plaintiff makes an argument regarding the findings of a third doctor, Dr. Lawrence Mintzer, an independent examiner for the Social Security Administration. [Plaintiff's Brief at 21-22.] However, the Court finds that the ALJ provided a sufficient explanation as to why she gave Dr. Mintzer's opinion only partial weight, including that "he did not offer any specific functional limitations for consideration" and because "the record does not support severe or marked restrictions in functioning, as the claimant manages his mental health with medications alone." [AR at 29.] Thus, the Court is satisfied that the ALJ's treatment of Dr. Minzter's findings are supported by substantial evidence and is consistent with the ALJ's treatment of Dr. Carlo's and Mr. Stemetzki's opinions.

> show only waxing and waning symptoms of depression, anxiety, diabetes, and COPD. The claimant managed all such conditions with medications alone. Dr. Monte Carlo suggested that the claimant had significant medication side effects and frequent bouts of hyperglycemia, but the same is not reflected in his treating record. Further, Dr. Monte Carlo opined on an issue reserved to the Commissioner in suggesting overall disability and he did not provide any specific functional limitations for consideration. Overall, these opinions are not consistent with or supported by the claimant's treating history and are overly restrictive in light of his treating history as a whole.

[AR at 28-29.]

The ALJ goes on to explain that just like Dr. Carlo did back in January 2019, Plaintiff's therapist, Mr. Stemetzki, "submitted a similar statement in January 2019," in which he concluded that "the claimant's severe mental health issues prohibited him from functionally [sic] normally in the community and the claimant would be a good candidate for disability." [*Id.* at 29.] Thus, the ALJ gave little weight to Mr. Stemetzki's opinion since he "is not an acceptable medical source and he did not offer any specific functional limitations for consideration. He simply opined on an issue reserved to the Commissioner. His opinion is outweighed by the claimant's treating history as a whole." [*Id.*]

The Court is satisfied the ALJ's balancing of the competing medical findings is supported by substantial evidence. Indeed, the ALJ faced an arduous task in considering the extensive amount of medical and non-medical evidence in this case. As the Commissioner correctly points out, "[i]f, … [a] treating physician' s opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [her]

reasons and makes a clear record." [Commissioner's Brief at 12 (*citing Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d. Cir. 2007); *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014)).] This is exactly what the ALJ did here in balancing the conflicting medical evidence before her and providing detailed and logical explanations that supported her conclusions. Plaintiff's second argument fails.

    c.    <u>The ALJ's Consideration of Joyce Silberg's Statement</u>

Plaintiff's final argument is that "[t]here is no indication in the decision as to why Ms. Silberg's statements and observations are only given partial weight." [Plaintiff's Brief at 25.] Again, the Court disagrees. The ALJ first summarized the letter submitted by Ms. Silberg on her son's behalf, including that he has been struggling with several physical and mental impairments since early childhood, including neurological impairments, behavioral problems, and chronic pain, among others. [AR at 24-25.] Indeed, the ALJ assigned only partial weight to Ms. Silberg's statements, but in doing so, she provided a reasonable explanation as to why: "Ms. Silberberg [sic] has personal knowledge of the claimant and his daily activities, but she is not an acceptable medical source and she did not offer any specific functional limitations for consideration. Further, her statements are not impartial." [AR at 30.]

The Court finds that Plaintiff's contentions with regard to the ALJ's consideration of his mother's submitted statements are inaccurate. Plaintiff even admits that "[a]lthough the ALJ may weigh the credibility of the evidence, the ALJ must give some indication of the evidence which he rejects and his reason(s) for

discounting the evidence." [Plaintiff's Brief at 24.] This is exactly what the ALJ did. Thus, Plaintiff's final argument is rejected.

## V.  CONCLUSION

The Court concludes that a limited remand, as opposed to reversal, is appropriate. On remand, consistent with the Court's Opinion, the ALJ shall consider whether or not additional limitation are warranted in the RFC assessment to account for Plaintiff's functional limitations in the four broad areas of functioning measured by the "paragraph B" criteria. For the foregoing reasons, the Court **vacates** the decision of the ALJ and **remands** for proceedings consistent with the above analysis. An accompanying Order shall issue.


Date: <u>February 24, 2022</u>                              s/Renée Marie Bumb
                                                            Renée Marie Bumb
                                                            U.S. District Judge